PLG DAMAGE ATTORNEYS
VINIT R. VENKATESH (367857)
TELEPHONE: 305-506-4746
2750 SW 145TH AVENUE #509
MIRAMAR, FLORIDA 33027
VV@PLGDAMAGE.COM
ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASS

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Alan Adams, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FRTO LLC d/b/a Blackstone Toyota of Fresno,<br><br>Defendant. | Case No.:<br><br>**Complaint for Damages and Injunctive Relief for Violations of:** 47 U.S.C. § 227(c); 47 C.F.R. §§ 64.1200(c)(2), (d)<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Alan Adams ("Plaintiff") brings this putative class action against FRTO LLC d/b/a Blackstone Toyota of Fresno ("Blackstone" or "Defendant") and alleges as follows upon personal knowledge as to himself and his own acts and experiences, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1. This action arises from Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (the "TCPA"), and regulations promulgated by the Federal Communications Commission ("FCC") to protect consumers from unwanted telemarketing calls and text messages.

2. Defendant sent Plaintiff repeated promotional text messages advertising vehicle inventory even though Plaintiff's personal wireless telephone number had been registered on the National Do Not Call Registry since January 19, 2017, and even after Plaintiff replied "STOP" to a Blackstone sales text and Defendant's own messaging system automatically confirmed that Plaintiff had been unsubscribed.

3. Approximately thirteen minutes after that confirmation, a different Blackstone salesperson texted Plaintiff from a separate telephone number, and Plaintiff again told Defendant in writing that he had already opted out and did not consent to further messages. Defendant nonetheless sent Plaintiff additional sales texts in July 2026 and, after Plaintiff's counsel sent Defendant a formal TCPA notice letter by certified mail on August 10, 2026, sent Plaintiff yet another promotional text on August 31, 2026.

4. Plaintiff seeks statutory and treble damages, injunctive relief, and other available relief for himself and similarly situated consumers whose company-specific do-not-call requests Defendant failed to honor and whose numbers were registered on the National Do Not Call Registry when Defendant sent repeated telephone solicitations.

**PARTIES**

5. Plaintiff Alan Adams is a natural person and a citizen and resident of Orange County, California. Plaintiff is a "person" entitled to bring this action under the TCPA.

6. Plaintiff is the subscriber and regular user of the wireless telephone number ending in 0713 (the "Subject Number"), which he uses for personal, family, and household purposes.

7. Defendant FRTO LLC d/b/a Blackstone Toyota of Fresno is a California limited liability company (California Secretary of State Entity No. 202200410246) that owns and operates an automobile dealership located at 50 W Bullard Ave, Fresno, California 93704, and that markets and sells vehicles throughout this District. That dealership operates under California Bureau of Automotive Repair license number 302603, issued to "Blackstone Toyota of Fresno" at that same address.

8. Unless otherwise indicated, references to Defendant include persons and entities acting on Defendant's behalf in connection with the text-message campaign at issue, including its owners, affiliates, dealership personnel, sales representatives, marketing partners, lead-management providers, customer-relationship-management providers, texting and messaging vendors, agents, employees, contractors, successors, and assigns.

**JURISDICTION AND VENUE**

9. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA. The TCPA supplies a private right of action for violations of 47 U.S.C. § 227(b) and, separately, to a person who receives more than one call within a twelve-month period in violation of regulations prescribed under 47 U.S.C. § 227(c). 47 U.S.C. §§ 227(b)(3), 227(c)(5).

10. This Court has personal jurisdiction over Defendant because Defendant operates its automobile dealership in this District, transacts substantial business in California, and purposefully directed the text-message campaign at issue at Plaintiff and other consumers from this District.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this District and a substantial part of the events giving rise to Plaintiff's claims — including Defendant's operation of its dealership and its transmission of the challenged text messages — occurred in this District.

12. Because the action arises out of Defendant's dealership located in Fresno County, assignment to the Fresno Division is appropriate under Eastern District of California Local Rule 120(d).

## STATUTORY AND REGULATORY BACKGROUND

**Telephone Consumer Protection Act**

13. Congress enacted the TCPA to protect consumers from unwanted telemarketing and the resulting invasion of privacy, nuisance, and disruption.

14. Section 227(c) directed the FCC to adopt rules protecting telephone subscribers' privacy rights and limiting unwanted telephone solicitations. 47 U.S.C. § 227(c)(1)-(2).

15. A text message is a "call" within the meaning of the TCPA. Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 156 (2016).

16. The FCC defines a "telephone solicitation" as the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. 47 C.F.R. § 64.1200(f)(15).

**Company-Specific Do-Not-Call Rule**

17. The FCC's company-specific do-not-call rule provides that no person or entity may initiate a call for telemarketing purposes to a residential telephone subscriber unless it has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. 47 C.F.R. § 64.1200(d).

18. Those procedures must include, among other requirements, a written internal do-not-call policy available upon demand; training of personnel engaged in telemarketing; recording and disclosure of do-not-call requests; and honoring such a request within a reasonable time not exceeding ten business days from its receipt. 47 C.F.R. § 64.1200(d)(1)-(6).

19. A company-specific do-not-call request terminates an established business relationship for purposes of future telephone solicitations. 47 C.F.R. § 64.1200(f)(5)(i).

20. Separately, the FCC's National Do Not Call Registry rule prohibits initiating a telephone solicitation to a residential telephone subscriber who has registered the subscriber's telephone number on the National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2).

21. "STOP" sent in reply to an incoming text message is a reasonable means per se to revoke prior express consent, and a valid revocation must be honored within a reasonable time not to exceed ten business days. 47 C.F.R. § 64.1200(a)(10).

22. The protections in 47 C.F.R. § 64.1200(c) and (d) apply to telephone solicitations and telemarketing calls placed to wireless telephone numbers used for personal, family, or household purposes. 47 C.F.R. § 64.1200(e). Whether a wireless number is residential depends on how the subscriber customarily uses it. Chennette v. Porch.com, Inc., 50 F.4th 1217, 1224-26 (9th Cir. 2022).

**Automatic Telephone Dialing System Prohibition**

23. Separately, absent an applicable exception or the required consent, the TCPA prohibits any call — including a text message — made to a cellular telephone number using an automatic telephone dialing system. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii).

**Remedies**

24. A person who receives more than one telephone call within a twelve-month period by or on behalf of the same entity in violation of regulations prescribed under § 227(c) may seek actual monetary loss or $500 for each violation, whichever is greater, and injunctive relief. 47 U.S.C. § 227(c)(5). A person who receives a call in violation of § 227(b) may seek the same relief for each such violation. 47 U.S.C. § 227(b)(3).

25. If a defendant willfully or knowingly violates the regulations prescribed under § 227(c), or willfully or knowingly violates § 227(b), the Court may increase the award to as much as three times the amount otherwise available. 47 U.S.C. §§ 227(b)(3), 227(c)(5)(C).

## FACTUAL ALLEGATIONS

26. Plaintiff is the subscriber and regular user of the Subject Number, which has been registered on the National Do Not Call Registry since January 19, 2017, and which he uses for personal, family, and household purposes and not as a business line.

27. On March 15, 2026, Defendant, through a sales representative identifying herself as "Addison with Blackstone Toyota," sent Plaintiff a text message thanking him for an inquiry and asking whether he wished to schedule an appointment with a sales professional. The message stated, "You can reply STOP to opt-out."

28. Plaintiff replied "Stop."

29. Defendant's messaging system immediately confirmed: "You have successfully been unsubscribed. You will not receive any more messages from this number. Reply START to resubscribe."

30. Defendant's confirmation establishes that Defendant received and processed Plaintiff's company-specific do-not-call request and associated that request with the Subject Number.

31. Approximately thirteen minutes later, and still on March 15, 2026, Defendant, from a different telephone number bearing a 559 area code, transmitted three additional sales text messages to Plaintiff. The sender identified himself as "TK, Internet Sales Manager here at Blackstone Toyota Fresno" and referenced a 2024 Toyota 4Runner TRD PRO.

32. Plaintiff responded in writing that he had already opted out of Defendant's automated texts, that Defendant had texted him again from a separate number, and that he did not consent to further messages.

33. Defendant thus had actual, written notice — communicated directly to one of its own sales personnel, in addition to the automated confirmation its own system had generated — that Plaintiff had opted out and did not consent to further telemarketing text messages.

34. After Plaintiff's March 15, 2026 STOP request and written objection, Plaintiff reasonably expected Defendant to place the Subject Number on its internal do-not-call, do-not-text, and suppression lists across all dealership personnel, campaigns, numbers, and vendors.

35. Plaintiff did not thereafter consent, re-consent, or agree to resume receiving promotional text messages from Defendant, and did not reply "START" or otherwise request to resubscribe.

36. Any established business relationship arising from Plaintiff's March 15, 2026 inquiry was, at the latest, terminated by Plaintiff's STOP reply that same day, and Plaintiff did not thereafter provide Defendant prior express invitation or permission for any telephone solicitation.

37. Nevertheless, on July 1, 2026, Defendant sent Plaintiff another sales text message advertising a newly arrived 2026 Toyota 4Runner and directing him to a tracking link, again inviting him to "Reply STOP to opt-out."

38. On July 31, 2026, Defendant, through a sales representative identifying herself as "Brenna from Blackstone Toyota," sent Plaintiff a further sales text message advertising a 2026 Toyota 4Runner for $64,953, together with a tracking link and the instruction "Reply STOP to opt out."

39. The July 1 and July 31, 2026 messages were each sent more than ten business days — and, in fact, more than three months — after Plaintiff's March 15, 2026 do-not-call request, well outside the maximum period in which 47 C.F.R. § 64.1200(d)(3) requires such a request to be honored.

40. On August 10, 2026, Plaintiff's counsel sent Defendant, via certified mail, a formal pre-suit notice letter identifying Plaintiff's do-not-call requests, attaching representative screenshots, citing the TCPA and the FCC regulations at issue, and demanding that Defendant immediately cease transmitting further messages to the Subject Number and place the Subject Number on all internal suppression and do-not-call lists across its dealership departments, personnel, campaigns, numbers, and vendors.

41. Despite having received that formal written notice, on August 31, 2026, Defendant, again through "Brenna," sent Plaintiff yet another sales text message — this one promoting Mazda inventory at Blackstone Toyota — together with a tracking link and another instruction to "Reply STOP to opt out."

42. The August 31, 2026 message was sent approximately three weeks after Defendant received actual, written, certified-mail notice that Plaintiff had repeatedly opted out and did not consent to further contact, and confirms that Defendant's failure to record, synchronize, and honor Plaintiff's do-not-call request was not an isolated lapse but a continuing failure spanning multiple sales personnel, campaigns, and months of solicitations.

43. The challenged messages were telephone solicitations and telemarketing because their purpose was to encourage Plaintiff to purchase or lease a vehicle from Defendant and to advertise specific vehicle inventory and pricing.

44. Defendant's use of different sales representatives (Addison, TK, and Brenna), different originating telephone numbers, and different message threads over a period of more than five months does not eliminate its obligation to record and honor a company-specific do-not-call request across its dealership CRM, sales-user accounts, number pools, campaigns, and third-party messaging infrastructure.

45. Upon information and belief, Defendant used centralized dealership customer-relationship-management and/or third-party texting or messaging platforms, common campaign templates, and common policies and procedures to assign sales personnel and telephone numbers, transmit marketing text messages, receive and process opt-out responses, and determine whether telephone numbers remained eligible for further marketing.

46. Upon information and belief, Defendant and its CRM and messaging vendors maintain records — including outbound transmission logs, inbound message logs, opt-out and suppression records, sales-personnel and number-pool assignment records, and tracking-link and redirect records — sufficient to identify the dates, times, target telephone numbers, originating numbers, sales personnel, campaigns, and opt-out status associated with the text messages sent to Plaintiff and other consumers.

47. Those records can identify consumers whose numbers were registered on the National Do Not Call Registry, consumers who submitted company-specific opt-out requests, the dates on which the requests were received, and any later Blackstone telemarketing text messages.

48. True and correct copies of representative text messages reflecting the March 15, July 1, July 31, and August 31, 2026 communications are attached as Exhibit A and incorporated by reference.

49. Defendant's conduct caused Plaintiff actual harm, including invasion of privacy, annoyance, nuisance, loss of time, occupation of his telephone, and interference with the use and enjoyment of his device.

50. Defendant's violations were knowing or willful. Defendant's own automated system confirmed Plaintiff's opt-out request on March 15, 2026; one of Defendant's own sales representatives separately received Plaintiff's written reiteration of that opt-out the same day; and Plaintiff's counsel gave Defendant actual, certified-mail notice of Plaintiff's do-not-call requests and the TCPA violations at issue on August 10, 2026. Defendant nevertheless caused at least one additional promotional text message to be transmitted to the Subject Number after each of those points of notice, culminating in the August 31, 2026 message sent after Defendant received Plaintiff's counsel's formal written demand.

## CLASS ALLEGATIONS

**<u>Proposed Classes</u>**

51. Plaintiff brings this action under Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and the following proposed Classes:

**Internal Do-Not-Call Class:** All persons in the United States to whom, from four years before the filing of this action through the date of class certification, Defendant or a person acting on its behalf sent more than one text message within a twelve-month period promoting Defendant's vehicles or other goods or services, at a wireless telephone number, where (1) records of Defendant or its dealership CRM or messaging vendors reflect that the subscriber or user of that number replied "STOP" or another opt-out keyword recognized by Defendant's messaging platform, and (2) at least one such message was sent more than ten business days after that reply.

**National Do Not Call Registry Class:** All persons in the United States who, from four years before the filing of this action through the date of class certification: (1) used a wireless telephone number for personal, family, or household purposes; (2) had that number registered on the National Do Not Call Registry for at least thirty-one days; and (3) received more than one telephone-solicitation call or text message within a twelve-month period by or on behalf of Defendant.

52. Plaintiff reserves the right to refine the Class definitions based on discovery and further investigation. The Classes are defined by reference to objective criteria ascertainable from the outbound-message, inbound-response, National Do Not Call Registry, and suppression records of Defendant and its CRM and messaging vendors, without resort to individualized testimony.

53. Excluded from the Classes are Defendant; Defendant's parents, subsidiaries, affiliates, officers, directors, and employees; the judicial officers assigned to this action and their immediate family members and staff; and persons who timely and validly request exclusion.

54. The Classes are sufficiently numerous that joinder is impracticable. Upon information and belief, Defendant transmits sales and promotional text messages to a substantial volume of consumers in the regular course of its dealership marketing operations, and the number and identities of Class members can be ascertained from Defendant's and its vendors' standardized outbound-message, inbound-response, National Do Not Call Registry, and suppression records.

**Common Questions and Rule 23 Requirements**

55. Common questions of law and fact include whether Defendant initiated or caused the challenged text messages; whether the messages constituted telemarketing or telephone solicitations; whether Defendant maintained and implemented compliant do-not-call policies, training, records, and suppression procedures; whether Defendant honored STOP requests within ten business days; whether Defendant sent repeated solicitations to National Do Not Call Registry numbers; and whether Defendant's conduct was knowing or willful.

56. These common questions predominate because liability can be determined principally from standardized text content and Defendant's centralized CRM, inbound-message, National Do Not Call Registry, and suppression records rather than from individualized testimony.

57. Plaintiff's claims are typical because he received multiple Blackstone sales solicitations while his wireless number was registered on the National Do Not Call Registry, submitted a company-specific do-not-call request that Defendant's own system confirmed, and later received additional promotional texts.

58. Plaintiff will fairly and adequately protect the interests of the Classes. His interests do not conflict with those of the Classes, and he has retained counsel experienced in TCPA and complex litigation.

59. A class action is superior to individual actions because the statutory recovery available to each Class member is modest compared with the burden and expense of separate litigation, and common adjudication will promote efficiency and consistent results.

60. Certification under Rule 23(b)(2) is also appropriate because Defendant has acted or refused to act on grounds generally applicable to the Classes, making final injunctive and corresponding declaratory relief appropriate for the Classes as a whole.

**COUNT I**
**VIOLATION OF 47 U.S.C. § 227(c) AND 47 C.F.R. § 64.1200(d)**
***(On Behalf of Plaintiff and the Internal Do-Not-Call Class)***

61. Plaintiff re-alleges and incorporates paragraphs 1 through 60 as if fully set forth herein.

62. Defendant initiated, or caused to be initiated on its behalf, calls in the form of text messages for telemarketing purposes to Plaintiff and the Internal Do-Not-Call Class at wireless telephone numbers used for personal, family, or household purposes.

63. Plaintiff and the Internal Do-Not-Call Class made clear company-specific requests not to receive further telemarketing calls or text messages from Defendant, including by replying STOP.

64. Defendant failed to honor those requests within a reasonable time not exceeding ten business days and failed to maintain and enforce the requests as required by 47 C.F.R. § 64.1200(d).

65. Defendant's continued transmission of promotional text messages to the Subject Number in July and August 2026 — after Defendant's own system confirmed Plaintiff's March 15, 2026 opt-out, after one of Defendant's sales representatives received Plaintiff's written reiteration of that opt-out, and after Defendant received Plaintiff's counsel's August 10, 2026 written notice — demonstrates that Defendant failed to institute or effectively implement one or more required internal do-not-call procedures, including maintaining an effective written policy, training personnel, recording do-not-call requests, and honoring those requests across its sales staff, campaigns, and originating numbers.

66. To the extent Defendant delegated transmission, opt-out processing, list maintenance, National Do Not Call Registry screening, or suppression to a CRM or messaging vendor or other third party, Defendant remains responsible for calls initiated on its behalf and for failures to honor do-not-call requests.

67. Plaintiff and each Internal Do-Not-Call Class member received more than one telephone-solicitation call or text message within a twelve-month period by or on behalf of Defendant in violation of regulations prescribed under 47 U.S.C. § 227(c), including at least one message after Defendant was required to honor the request.

68. Defendant's violations were knowing or willful because Defendant's own system confirmed the opt-out request, Defendant's personnel separately received written notice of the opt-out, and Defendant received Plaintiff's counsel's written pre-suit notice, yet Defendant caused further telemarketing messages to be transmitted to the Subject Number after each point of notice.

69. Under 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do-Not-Call Class are entitled to actual monetary loss or $500 for each violation, whichever is greater, and injunctive relief.

70. Because Defendant's violations were knowing or willful, Plaintiff and the Internal Do-Not-Call Class are entitled to an award of up to $1,500 for each violation. 47 U.S.C. § 227(c)(5)(C).

**COUNT II**
**VIOLATION OF 47 U.S.C. § 227(c) AND 47 C.F.R. § 64.1200(c)(2)**
***(On Behalf of Plaintiff and the National Do Not Call Registry Class)***

71. Plaintiff re-alleges and incorporates paragraphs 1 through 70 as if fully set forth herein.

72. Defendant initiated, or caused to be initiated on its behalf, telephone solicitations in the form of text messages to Plaintiff and the National Do Not Call Registry Class at wireless telephone numbers used for personal, family, or household purposes.

73. The Subject Number had been registered on the National Do Not Call Registry since January 19, 2017, long before Defendant sent the March 15, July 1, July 31, and August 31, 2026 solicitations.

74. Plaintiff did not provide Defendant prior express invitation or permission for the challenged solicitations. Any established business relationship arising from Plaintiff's March 15, 2026 inquiry was, at the latest, independently terminated by Plaintiff's STOP reply that same day.

75. Defendant initiated or caused more than one telephone solicitation to Plaintiff and each National Do Not Call Registry Class member within a twelve-month period while their wireless telephone numbers were registered on the National Do Not Call Registry, in violation of 47 C.F.R. § 64.1200(c)(2).

76. Defendant's violations were knowing or willful because it knew or should have known that the Subject Number was registered on the National Do Not Call Registry and failed to screen, suppress, or otherwise prevent the prohibited solicitations. As to Plaintiff, Defendant also received Plaintiff's March 15, 2026 STOP request and Plaintiff's counsel's August 10, 2026 written notice before sending the July 31 and August 31, 2026 solicitations.

77. Under 47 U.S.C. § 227(c)(5), Plaintiff and the National Do Not Call Registry Class are entitled to actual monetary loss or $500 for each violation, whichever is greater, and injunctive relief.

78. Because Defendant's violations were knowing or willful, Plaintiff and the National Do Not Call Registry Class are entitled to an award of up to $1,500 for each violation. 47 U.S.C. § 227(c)(5)(C).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Classes, respectfully requests that the Court enter judgment in his favor and against Defendant and award the following relief:

a) An order certifying this action as a class action under Rule 23, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

b) Actual monetary loss or statutory damages of $500 for each violation, whichever is greater;

c) Treble damages of up to $1,500 for each knowing or willful violation;

d) Injunctive and declaratory relief requiring Defendant to honor company-specific do-not-call requests, refrain from sending telephone solicitations to National Do Not Call Registry numbers absent a lawful exception, and maintain compliant policies, training, records, screening, suppression systems, and vendor controls;

e) Costs, expenses, and reasonable attorneys' fees to the extent permitted by law or payable from any common fund, together with pre-judgment and post-judgment interest; and

f) Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff and the members of the proposed Classes demand a trial by jury on all issues so triable.

**DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendant take affirmative steps to preserve all records and electronically stored information relevant to the allegations, including outbound text-message logs, inbound STOP and other opt-out messages, opt-out confirmations, National Do Not Call Registry screening records, suppression lists, CRM records, sales-personnel and number-pool assignment records, tracking-link and redirect records, vendor contracts and instructions, campaign configurations, written do-not-call policies, training materials, and communications concerning the messages at issue.

Dated: September 29, 2026

Respectfully submitted,

/s/ Vinit R. Venkatesh, Esq.
Vinit R. Venkatesh, Esq.
California Bar No. 367857
E-mail: vv@plgdamage.com
PLG Damage Attorneys
2750 SW 145th Avenue, Suite 509
Miramar, Florida 33027
Phone: 305-506-4746

COUNSEL FOR PLAINTIFF AND THE PROPOSED CLASSES

# EXHIBIT A

**March 15, 2026 — Blackstone Toyota Sales Text, STOP Reply, and Unsubscribe Confirmation (Sender Identified as "Addison")**




-

**March 15, 2026 — Follow-Up Sales Texts From a Separate Number and Plaintiff's Written Opt-Out Reiteration (Sender Identified as "TK")**




-

**July 1 and July 31, 2026 — Blackstone Toyota Sales Texts (Sender Identified as "Brenna")**




-

**July 1, July 31, and August 31, 2026 — Blackstone Toyota Sales Texts, Including the Message Sent After Counsel's Written Notice (Sender: (833) 997-9334)**

